**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KRZYSZTOS CZYZYKOWSKI, *et al.* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No.: 3:15-cv-02018-BRM-LHG |
| v. | : | |
| | : | **OPINION** |
| F/V OCEAN VIEW, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Motions for Summary Judgment (ECF Nos. 117 & 118) filed by Defendants Satellite Crane, LLC ("Satellite Crane") and Sea Watch International, Ltd. ("Sea Watch"), respectively. Plaintiffs Krzysztos Czyzykowski ("Czyzykowski") and Marzena Czyzykowski ("Czyzykowski's Wife"), as well as Defendants Jeffrey Simmons t/a Star-Link Services ("Simmons"), F/V Ocean View, Inc. ("F/V Ocean View") and TMT Clam Dredgers, Inc. ("TMT Clam Dredgers") oppose both motions. (ECF No. 120, 121-1, 122, 124.) Satellite Crane opposes Sea Watch's motion. (ECF No. 123.) Having reviewed the parties' submissions filed in connection with the motions and having heard oral argument on August 20, 2019 pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause having been shown, both Satellite Crane's and Sea Watch's Motions for Summary Judgment are **GRANTED IN PART** and **DENIED IN PART**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a night-time, dock-side crane accident in which Czyzykowski, a seaman, was injured while he assisted with the unloading of large cages of clams from the fishing vessel *E.S.S. Pursuit*. (ECF No. 118-18 ¶ 1.) F/V Ocean View owns the *Pursuit*. (ECF No. 123-4 ¶ 3.) F/V Ocean View and TMT Clam Dredgers operate the *Pursuit* pursuant to a bareboat charter agreement. TMT

Clam Dredgers employed Czyzykowski as a crew member on the *Pursuit*. (ECF No. 123-4 ¶ 6.) Sea Watch, a Maryland-based seafood company, operates the dock on which Czyzykowski's injury occurred, as well as an adjacent seafood processing plant. (ECF No. 118-10 ¶¶ 2-4.) Sea Watch undertakes certain "responsibilit[ies] with regard to unloading of clams at the facility"—namely, "to make sure the clams are unloaded in a timely fashion, and that they are moved into the facility in a timely fashion, and to ensure that company guidelines with regard to the proper handling of seafood are followed." (ECF No. 118-10 ¶ 7.) Most Sea Watch employees work only inside the processing plant, but Sea Watch employs forklift operators who move clam cages from the dock into the processing plant. (ECF No. 118-10 ¶ 6.)

Sea Watch uses Satellite Crane to operate the cranes when fishing vessels come to the dock to unload cargo. (ECF No. 118-10 ¶¶ 9-11.) According to their contract, Sea Watch required Satellite Crane to provide crane operation service for one crane on 30-minutes notice and operation for a second crane on 60-minutes notice. (ECF No. 118-12, at 2.) While Satellite Crane provided the crane operators, Sea Watch owned and provided the cranes on site; Satellite Crane did not use its own cranes. (ECF No. 118-10 ¶ 8; ECF No. 118-14, at 106:14-23.) Sea Watch prohibited Satellite Crane from using its cranes for Satellite Crane's own use and required Satellite Crane to use Sea Watch's cranes "as directed." (ECF No. 118-14, at 107:11-23.) Notwithstanding Sea Watch's control over its cranes, Sea Watch required Satellite Crane both to conduct maintenance on the cranes, including greasing, lubricating, and maintaining fuel engine oil levels, and to provide other, ancillary crane services "at the instructions of Sea Watch." (ECF No. 118-14, at 108:4-17, 175:21-25.) Sea Watch, however, provided the hooks used by the cranes for lifting the clam cages—hooks that one expert testified had an unreasonable, dangerous design that contributed to Czyzykowski's injury, when reasonable, less dangerous hooks were commercially available. (ECF No. 120-4, Ex. W, at 6-7.) Satellite Crane is entitled to an office on Sea Watch's premises, but Sea Watch exercises dominion and control over that office space. (ECF No. 118-14, at 113:20-114:23.)

Satellite Crane, in turn, uses Simmons to cover crane operation services when Satellite Crane is unable to do so. (ECF No. 118-13, at 1.) A licensed crane operator, Simmons earned the appropriate state-issued licenses by passing multiple tests after taking classes with both a classroom component, a hands-on, crane-operation component, and a safety education component. (ECF No. 117-9, at 15:7-22, 21:19-23:3.) In addition to his licensing training, Simmons spent an additional 40 hours—including 4 hours of supervised training for working at night—over the course of a month to train to use the specific crane at the Sea Watch dock. (ECF No. 117-9, at 90:2-91:14.)

Following his training, Satellite Crane required Simmons to provide crane operations services "in an on-call manner." (ECF No. 118-13, at 1.) Simmons's "minimum" hours requirement was to be "on call" for three 12-hour shifts and two 6-hour shifts every week, and "[a]dditional service hours may be requested." (ECF No. 118-13, at 1.) Satellite Crane required Simmons to be available on 30-minutes notice. (ECF No. 118-13, at 1.) When working, Simmons was responsible for completing certain required paperwork. (ECF No. 118-13, at 1.) Satellite Crane required Simmons to insure both Satellite Crane and Sea Watch (at Simmons's expense), with Satellite Crane dictating the types of insurance as well as the acceptable liability limits and deductibles, and retaining veto power over Simmons's choice of insurers. (ECF No. 118-13, at 3.) If Simmons sought to obtain replacement coverage for his crane operation services, Satellite Crane and Sea Watch both could exercise veto power over any replacement crane operator. (ECF No. 118-13, at 3.) Satellite Crane restricted Simmons's movements while at work, prohibiting Simmons from entering Sea Watch's processing plant for any purpose except to use the restroom. (ECF No. 118-13, at 3.)

Simmons operated the crane at the time of Czyzykowski's injury. (ECF No. 118-18 ¶ 1.) Although Czyzykowski suffered his injury from the crane, testimony in the record indicates that one of Sea Watch's forklift operators may have contributed to Czyzykowski's injury. Simmons testified that a Sea Watch forklift operator was out on the dock at the time of the injury and "spooked" Czyzykowski, causing Czyzykowski to react in a way that inadvertently mimicked the signal for Simmons to lift the

crane boom—which Simmons did, injuring Czyzykowski's hand in the process. (ECF No. 123-12, at 11:9-20, 42:17-43:5, 54:3-15.) Czyzykowski's crew mate Ivanov Pavel testified that in the immediate aftermath of the injury, Czyzykowski explained that the injury occurred when Sea Watch's forklift driver came too close to Czyzykowski. (ECF No. 123-13, at 11:18-12:2.) Czyzykowski testified he had never seen so many clam cages accumulate on the dock without having been removed to the processing plant by the forklift—a situation Czyzykowski described as dangerous both because there was insufficient room between cages for Czyzykowski to maneuver and because some cages would contact other cages, causing the cages to lose their balance and risk tipping over. (ECF No. 121-2, Ex. CC, at 55:15-19.)

Czyzykowski brought suit against his employer under the Jones Act, 46 U.S.C. § 30104,[1] and against a host of other entities under general maritime law, as well as a claim for maintenance and cure. (ECF No. 46 ¶¶ 16, 21.) Czyzykowski's Wife brought a claim "for loss of consortium and for past, present, and future financial losses" resulting from her husband's injury. (ECF No. 46 ¶ 19.) Satellite Crane and Sea Watch each moved for summary judgment. (ECF Nos. 117 & 118.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.* at 248. "In considering a motion

---

[1] This Court has jurisdiction over Jones Act claims under both the general grant of federal question jurisdiction and the specific grant of admiralty and maritime jurisdiction. *See Horizon Lines, LLC v. United States*, 414 F. Supp. 2d 46, 52 (D.D.C. 2006).

for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple*

*BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. Maritime Jurisdiction

The parties disagree concerning whether federal maritime law or state law applies to Czyzykowski's claims. Several parties argue that Czyzykowski's claims are non-maritime because his injury occurred on land, making them state law claims covered by state law—notwithstanding that the injury occurred during the unloading of a commercial fishing vessel at a dock, an activity properly characterized as involving maritime matters. The Court disagrees, and concludes Czyzykowski's claims are maritime claims[2] governed by federal law.

Generally speaking, claims under maritime law will be governed by federal common law, not state law. *See, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 741 (2004). A claim constitutes a maritime claim if, and only if, the claim falls within the district court's admiralty jurisdiction. *See Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 23 (2004). Congress has authorized district courts to exercise original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Unless a statute provides otherwise, "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534

---

[2] Czyzykowski does not plead any state law claims. The Amended Complaint explicitly provides that "[t]he defendants are liable to the plaintiffs for negligence under the Jones Act and the general maritime law," not state law. (ECF No. 46 ¶ 16.) Likewise, the Amended Complaint's jurisdictional allegations suggest jurisdiction only federal maritime jurisdiction, with no mention of supplemental jurisdiction over any state law claims. (ECF No. 46 ¶ 2.)

(1995). The location test requires "that the tort occurred on navigable water or [that] injury suffered on land was caused by a vessel on navigable water." *Id.* Satellite Crane and Czyzykowski argue that there can be no admiralty jurisdiction here—and therefore, federal law cannot govern Czyzykowski's claims—because this case fails the location test[3]: at the time of the incident, both the crane and Czyzykowski were located on land, not on a vessel in navigable water.

The location test does not apply to this case because Czyzykowski is a seaman and therefore covered by the Jones Act. As amended, the Jones Act provides as follows: "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. Admiralty jurisdiction over a Jones Act claim, then, "depends 'not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 359-60 (1995) (quoting *Swanson v. Marra Bros.*, 328 U.S. 1, 4 (1946)); *see also Victory Carriers, Inc. v. Law*, 404 U.S. 202, 209 n.8 (1971) (noting that the Jones "Act covered crewmen injured ashore as well as aboard"). No party contests that Czyzykowski qualifies as a seaman under the Jones Act. Accordingly, the Court has admiralty jurisdiction over Czyzykowski's claims,[4] which are therefore governed by federal law, not state law.[5]

### B. Vicarious Liability

Both Satellite Crane and Sea Watch make arguments concerning whether Czyzykowski can hold them vicariously liable for the acts of their independent contractors: Satellite Crane argues that it

---

[3] No party argues that this case fails the test for connection with maritime activity.

[4] The seaman test of *Chandris*, rather than the location/connection test of *Grubart*, also governs "jurisdiction of admiralty over causes of action for maintenance and cure for injuries received in the course of a seaman's employment." *Chandris*, 515 U.S. at 359.

[5] Although Czyzykowski's claims are covered by maritime law and not state law, this is a mere formality in this case, because federal maritime law incorporates principles of state law where the two do not conflict. *See, e.g.*, *DiNenno v. Lucky Fin Water Sports, LLC*, 837 F. Supp. 2d 419, 427 (D.N.J. 2011). Here, the maritime law cited below is consistent with the only other bodies of law (New Jersey state law and Massachusetts state law) that any party suggests may control. Even if the Court were to apply Massachusetts law or New Jersey law, the result would be the same.

cannot be liable for the negligence of its independent contractor Simmons, while Sea Watch argues that it cannot be liable for the negligence of its independent contractor Satellite Crane. Neither party's argument entitles it to summary judgment because a genuine issue of material fact exists concerning the degree of control that Sea Watch exercised over Satellite Crane, as well as the degree of control that Satellite Crane exercised over Simmons.

For claims under the Jones Act, an employer is liable for the actions of its independent contractor so long as that contractor is acting in furtherance of the employer's enterprise. *See Hopson v. Texaco, Inc.*, 383 U.S. 262, 264 (1966); *see also Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329-32 (1958) (issuing a similar holding in a decision under the Federal Employers' Liability Act[6]). For claims under general maritime law, a defendant generally cannot be held liable for the actions of its independent contractors unless the defendant exercises sufficient control over the independent contractor or negligently selects the independent contractor. *See In re Dann Ocean Towing, Inc.*, Civ. No. 15-1610, 2018 WL 901716, at *5 (D.N.J. Feb. 15, 2018) (collecting cases). The issue of the degree of a defendant's control over its independent contractor is question of fact for the jury. *See Costlow v. United States*, 552 F.2d 560, 563 (3d Cir. 1977).

In light of the evidence in this record, a genuine issue of material fact remains concerning the level of control Sea Watch exercised over Satellite Crane and that Satellite Crane exercised over Simmons.[7] For instance, Sea Watch required Satellite Crane it to provide crane operation service for one crane on 30-minutes notice and operation for a second crane on 60-minutes notice. (ECF No. 118-12, at 2.) Sea Watch provided the crane which Satellite Crane was required to operate; Satellite Crane did not use its own crane. (ECF No. 118-14, at 106:14-23.) In fact, Sea Watch prohibits Satellite

---

6   "The Jones Act incorporates the standards of the Federal Employers' Liability Act, as amended, which renders an employer liable for the injuries negligently inflicted on its employees by its 'officers, agents, or employees.'" *Hopson*, 383 U.S. at 263 (footnotes omitted).

7   Accordingly, the Court need not reach the issue of whether Sea Watch and Satellite Crane may be liable for the actions of their independent contractors on the ground that unloading clam cages is an inherently dangerous activity. (ECF No. 120, at 22-24.)

Crane from using the crane for Satellite Crane's own use; Sea Watch required Satellite Crane to use the crane "as directed." (ECF No. 118-14, at 107:11-23.) Notwithstanding Sea Watch's control over the crane, Sea Watch requires Satellite Crane to conduct maintenance on the crane, including greasing, lubricating, and maintaining fuel engine oil levels. (ECF No. 118-14, at 108:4-17.) Sea Watch provides an office on its premises for Satellite Crane, but Sea Watch exercises dominion and control over that office space. (ECF No. 118-14, at 113:20-114:23.) In addition to its primary crane operation services, Satellite Crane also had to provide other, ancillary crane services "at the instruction of Sea Watch." (ECF No. 118-14, at 175:21-25.) While Sea Watch puts forth other evidence suggesting it lacked control over Satellite Crane, the record demonstrates a genuine dispute of material fact over the degree of control, such that the Court cannot say as a matter of law that Sea Watch is insulated from liability to Czyzykowski in light of its insufficient control over Satellite Crane. *See Anderson*, 477 U.S. at 249.

A genuine dispute of material fact likewise exists over the degree of control that Satellite Crane exercised significant control over Simmons. Satellite Crane required Simmons to provide crane operations services "in an on-call manner." (ECF No. 118-13, at 1.) Simmons's "minimum" hours requirement was to be "on call" for three 12-hour shifts and two 6-hour shifts every week, and "[a]dditional service hours may be requested." (ECF No. 118-13, at 1.) Satellite Crane required Simmons to be available on 30-minutes notice. (ECF No. 118-13, at 1.) When Simmons worked, Satellite Crane made Simmons responsible for completing certain required paperwork. (ECF No. 118-13, at 1.) Satellite Crane required Simmons to insure both Satellite Crane and Sea Watch (at Simmons's expense), with Satellite Crane dictating the types of insurance as well as the acceptable liability limits and deductibles, and retaining veto power over Simmons's choice of insurers. (ECF No. 118-13, at 3.) If Simmons sought to obtain replacement coverage for his crane operation services, Satellite Crane and Sea Watch both could exercise veto power over any replacement crane operator. (ECF No. 118-13, at 3.) Satellite Crane restricted Simmons's movements while at work, prohibiting

Simmons from entering the seafood processing plant attached to the Sea Watch dock for any purpose except to use the restroom. (ECF No. 118-13, at 3.) While Satellite Crane puts forth other evidence suggesting it lacked control over Simmons, the record demonstrates a genuine dispute of material fact over the degree of control, such that the Court cannot say as a matter of law that Satellite Crane (and therefore Sea Watch) is insulated from liability to Czyzykowski in light of Satellite Crane's (and therefore Sea Watch's) insufficient control over Simmons. *See Anderson*, 477 U.S. at 249.

C. **Negligence Claim Against Sea Watch**

1. **Duty**

Sea Watch also argues that, as a dock owner, it owes no duty to seamen like Czyzykowski engaged in stevedoring operations at its dock. The Court rejects this argument because Sea Watch is more than a passive owner of the dock on which Czyzykowski's injury took place.

The "general maritime negligence standard" is "the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959). Under maritime law, a defendant owes a duty to a plaintiff regarding foreseeable risks, but not regarding unforeseeable risks. *See In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 236 (3d Cir. 2017). A dock owner generally owes no duty, by virtue of its mere ownership, to those operating on the dock with no relationship to the dock owner. *See Goldsmith v. Swan Reefer A.S.*, 173 F. App'x 983, 989 (3d Cir. 2006). However, a duty will arise if the dock owner takes part in the activities on the dock.[8] *See id.* at 989-90 (citing *Mullen v. Del Monte Fresh Produce N.A., Inc.*, No. Civ. A. 02-6722, 2004 WL 2203723 (E.D. Pa. Sept. 29, 2004)).

As a dock owner and operator, Sea Watch owed Czyzykowski a duty of exercising reasonable care under the circumstances because of Sea Watch's active participation in activities on the dock. For instance, Sea Watch provided the crane which injured Czyzykowski. (ECF No. 118-10 ¶ 8.)

---

8   The parties' frame the issue as whether or not Sea Watch is a "stevedore." The Court declines to adopt this framing because the duty analysis focuses on the activity in which the dock owner engages at the dock, not on the dock owner itself and its characterization.

Additionally, Sea Watch's forklift operators work on the dock, transporting clams from the dock into the processing facility. (ECF No. 118-10 ¶ 6.) Sea Watch also undertakes certain "responsibilit[ies] with regard to unloading of clams at the facility"—namely, "to make sure the clams are unloaded in a timely fashion, and that they are moved into the facility in a timely fashion, and to ensure that company guidelines with regard to the proper handling of seafood are followed." (ECF No. 118-10 ¶ 7.) As previously discussed, Sea Watch exercises a substantive level of control over the dock's crane operation services. *See* part III.B., *supra*. Given Sea Watch's significant involvement in the activities on the dock—and given that Sea Watch could reasonably foresee that these activities could contribute to an injury of the type Czyzykowski suffered—Sea Watch owed to Czyzykowski a duty of exercising reasonable care under the circumstances.

## 2. Causation

Sea Watch also argues that the record contains no evidence that Sea Watch caused Czyzykowski's injury. In light of the conflicting evidence, the Court disagrees.

Under maritime negligence law, a plaintiff must prove causation by showing that a defendant's actions were "a substantial factor in causing plaintiff's injury." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012). "In establishing causation, a plaintiff may rely upon direct evidence . . . or circumstantial evidence [to] support an inference" that the defendant's actions constituted a substantial factor. *Charlevoix v. Caterpillar, Inc.*, 239 F. Supp. 3d 814, 819-20 (D. Del. 2017) (quoting *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005)). This is normally a question for the jury. *See Redland Soccer Club, Inc. v. U.S. Dep't of the Army*, 55 F.3d 827, 851 (3d Cir. 1995) (applying Pennsylvania state tort law in a non-maritime case under the Federal Tort Claims Act).

A genuine dispute of material fact exists concerning whether Sea Watch caused Czyzykowski's injuries—that is, whether Sea Watch was a substantial factor. First, there is evidence suggesting that Sea Watch's forklift driver was a substantial factor in the accident. Simmons testified that Sea Watch's forklift driver was out on the dock at the time of the injury and "spooked" Czyzykowski, causing

Czyzykowski to react in a way that inadvertently mimicked the signal for Simmons to lift the crane boom—which Simmons did, injuring Czyzykowski's hand in the process. (ECF No. 123-12, at 11:9-20, 42:17-43:5, 54:3-15.) Czyzykowski's crew mate Ivanov Pavel testified that in the immediate aftermath of the injury,[9] Czyzykowski explained that the injury occurred when Sea Watch's forklift driver came too close to Czyzykowski. (ECF No. 123-13, at 11:18-12:2.) Czyzykowski himself stated that he'd never seen so many clam cages accumulate on the dock without having been removed to the processing plant by the forklift—a situation Czyzykowski described as dangerous both because there was insufficient room between cages for Czyzykowski to maneuver and because some cages would contact other cages, causing the cages to lose their balance and risk tipping over. (ECF No. 121-2, Ex. CC, at 55:15-19.)

Sea Watch points to evidence that its forklift driver was not on the dock—but rather, in the processing plant—at the time of Czyzykowski's injury. But at the summary judgment stage, this Court cannot simply weigh Sea Watch's competing evidence more favorably than the evidence from the opposing parties. *See Big Apple BMW*, 974 F.2d at 1363. The existence of competing evidence merely demonstrates the existence of a genuine issue of material fact concerning whether the forklift operator was present and therefore could have been a substantial factor in Czyzykowski's injury. *See Anderson*, 477 U.S. at 249.

Sea Watch also argues that its forklift driver bore no responsibility for the buildup of clam cages at the dock; rather, the crane operator (Simmons) bore full responsibility for the buildup and should have stopped the unloading process if the dock became dangerously crowded. This argument does not

---

9  Pavel testified that Czyzykowski made this statement while several people were treating Czyzykowski's injury and just before Czyzykowski was taken to the hospital. (ECF No. 123-13, at 11:9-17.) Accordingly, Czyzykowski's hearsay statement likely qualifies as an excited utterance. *See* Fed. R. Evid. 803(2); *Peterson v. Warren*, Civ. No. 13-4250, 2018 WL 3054680, at *7 (D.N.J. June 20, 2018) (holding that a statement likely qualifies as an excited utterance when made in the immediate aftermath of a physical injury prior to transport to the hospital). The Court may therefore consider it when reviewing a motion for summary judgment. *Cf.* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The Court makes this determination without prejudice to any subsequent motion *in limine*.

entitle Sea Watch to summary judgment because questions of causation like this are to be resolved by the jury at trial, not by the Court on summary judgment. *See Redland Soccer Club*, 55 F.3d at 851.

Second, there is evidence showing that the J-hooks provided by Sea Watch were a substantial factor in Czyzykowski's injuries. According to Czyzykowski's expert Stephen Barry, the hooks that Sea Watch provided for use in lifting the clam cages had an unreasonable, dangerous design that contributed to Czyzykowski's injury, when other reasonable, less dangerous hooks were commercially available. (ECF No. 120-4, Ex. W, at 6-7.) Sea Watch argues that these hooks were reasonable under the circumstances and that the evidence does not show that the hooks contributed to Czyzykowski's injury. In other words, the parties have a genuine dispute of material fact that a jury must resolve at trial, but that this Court may not resolve on summary judgment. *See Anderson*, 477 U.S. at 249.

### 3. Condition of the Dock

Sea Watch's last argument contends that Sea Watch is entitled to summary judgment on any negligence claim concerning the physical condition of the dock, such as inadequate lighting. (ECF No. 118-3, at 18; ECF No. 126, at 14.) No party contests this argument. Accordingly, Sea Watch is entitled to summary judgment to the extent this argument is unopposed. *See Bradley v. Kuntz*, 655 F. App'x 56, 59 (3d Cir. 2016) ("As an initial matter, [plaintiff] did not respond to the Motion for Summary Judgment as to his Fifth Amendment claim and the District Court granted that part of the motion as unopposed. That was acceptable.").

Additionally, the Court has independently reviewed the record and determined that there is insufficient evidence for a reasonable jury to find that the physical condition of the dock was a substantial factor in Czyzykowski's injury. *See Carbonaro v. Lutz*, Civ. No. 08-4928, 2010 WL 3040036, at *3 (D.N.J. Aug. 3, 2010) (suggesting that a district court must independently review the record before granting an unopposed portion of a motion for summary judgment). Accordingly, Sea Watch is entitled to summary judgment.

D.  **Inadequate Training Claim Against Satellite Crane**

Finally, Satellite Crane argues that there is no genuine dispute of material fact concerning whether Satellite Crane adequately trained Simmons. The Court agrees.[10]

A claim for failure to train under maritime law is a type of maritime negligence claim. *See, e.g.*, *Gross v. Tonomo Marine, Inc.*, No. 2:02-CV-1317, 2006 WL 1437321, at *6 (W.D. Pa. Mar. 9, 2006). Among the maritime duties owed by a defendant is a duty to properly and adequately train subordinates both to safely operate equipment in the normal course and in specific safety procedures. *See, e.g.*, *Nikiforow v. Rittenhouse*, 319 F. Supp. 697, 702 (E.D. Pa. 1970). A defendant must "exercise due diligence" when training subordinates. *See Gateway Clipper, Inc. v. Hill*, Civ. No. 05-984, 2007 WL 2692248, at *8 (W.D. Pa. Sept. 12, 2007).

Satellite Crane is entitled to summary judgment on this claim because the undisputed facts in the record demonstrate that Satellite Crane exercised due diligence in ensuring Simmons was adequately trained on the safe operation of the crane. Simmons testified that Massachusetts issued him the appropriate crane operation licenses, which he earned by passing multiple tests after taking classes with both a classroom component, a hands-on, crane-operation component, and a safety education component. (ECF No. 117-9, at 15:7-22, 21:19-23:3.) When he began working at the Sea Watch dock, Simmons spent an additional 40 hours—including 4 hours of supervised training for working at night—over the course of a month to train to use the specific crane at the Sea Watch dock. (ECF No. 117-9, at 90:2-91:14.)

Czyzykowski points out that Simmons did not receive this training directly from Satellite Crane (ECF No. 117-4, at 32:23-33:7), but the record contains no evidence to show that this training—from whatever source Simmons obtained it—was insufficient under the circumstances. The record contains

---

10 Satellite Crane also contends that Czyzykowski's failure-to-train argument is "disingenuous" and made in "bad faith." (ECF No. 125, at 6-7.) While the Court disagrees with Czyzykowski's failure-to-train argument, the Court finds that his argument is "not being presented for any improper purpose," is "warranted by existing law," and has "evidentiary support." Fed. R. Civ. P. 11(b). Accordingly, the Court will impose no sanctions. *See* Fed. R. Civ. P. 11(c).

evidence that neither Satellite Crane nor Simmons documented this training (ECF No. 117-16, at 56:3-19), but Czyzykowski offers no reason to believe that this failure to document the training casts doubt on Simmons' testimony that he in fact underwent the training. For instance, Czyzykowski points to no legal requirement that crane operators document their training; nor does Czyzykowski produce any evidence that individuals in the crane operation industry customarily document their training. On this record, there is no genuine dispute of material fact concerning Simmons's training, and Satellite Crane is therefore entitled to judgment as a matter of law on Czyzykowski's claim that Satellite Crane failed to adequately train Simmons.

IV. CONCLUSION[11]

For the reasons set forth above, Satellite Crane's Motion for Summary Judgment (ECF No. 117) is **GRANTED IN PART** as to Czyzykowski's claim that Satellite Crane's inadequate training of Simmons caused Czyzykowski's injury and **DENIED IN PART** as to all other claims, and Sea Watch's Motion for Summary Judgment (ECF No. 118) is **GRANTED IN PART** as to Czyzykowski's negligence claim that the physical condition of the dock (such as inadequate lighting) caused Czyzykowski's injury and **DENIED IN PART** as to all other claims. An appropriate order will follow.

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2019

---

[11] The parties put forward multiple other arguments concerning why the Court should deny the pending motions for summary judgment. In light of the Court's disposition of the motions, the Court need not consider those arguments.